UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TOLL BROTHERS, INC., et al.,<br><br>Defendants. | Case No. 20-cv-03656-HSG<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DENYING MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 105, 106, 111, 114, 115, 116 |

Pending before the Court are the parties' cross-motions for summary judgment in this insurance action. Dkt. Nos. 106, 115. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **DENIES** the motions.

**I.    BACKGROUND**

The facts are largely undisputed. A third-party company, Marble Palace, Inc., subcontracted with Defendant Shapell[1] to furnish and install bathroom tile at a housing development in San Ramon, called "Abbington at Gale Ranch." *See* Dkt. No. 112-1 ("Plante Decl.") at ¶¶ 2–3, 9; *see also* Dkt. No. 36 ("FAC") at ¶ 34. Plaintiff Travelers Property Casualty Company of America issued insurance policies to Marble Palace for this project (the "policies"). *See* Dkt. No. 106-1 ("Vandermoore Decl.") at ¶ 3; *id.* Exs. L–N. Under Marble Palace's subcontract with Shapell, Shapell had to be included as an additional insured under the policies. *See* Dkt. No. 106-1 ("Vandermoore Decl."), Ex. P at 120–22 (subcontractor agreement with

---

[1] Defendant Toll Brothers, Inc. acquired Shapell in 2014. *See* Plante Decl. at ¶ 3. The Court refers to Shapell and Toll Brothers collectively as "Defendants."

1   Shapell); Plante Decl. at ¶ 9.[2]  The parties appear to agree that Shapell is in fact an additional

2   insured under these policies.  *See, e.g.*, Dkt. No. 106 at 3–4.

3           In March 2018, the Abbington Owners' Association served Shapell with a Notice of

4   Claims under California Civil Code §§ 910, 6000, asserting that numerous construction defects

5   existed in the housing development (the "Abbington action").  *See* Plante Decl., Ex. 1.  Shapell

6   retained Plante Lebovic LLP.  *See* Plante Decl. at ¶ 4.  On April 13, 2018, Plante Lebovic

7   responded to the notice, commencing the pre-litigation process under California Civil Code § 910.

8   *See id.* at ¶¶ 5–6, 8, & Ex. 2 at 20–21.  As part of this process, Plante Lebovic attended an

9   inspection of the housing development on May 4, 2018, and observed testing of the buildings on

10  June 6 and 7, 2018, with Shapell's consultant.  *See id.* at ¶ 6.

11          On August 16, 2018, Shapell tendered the Abbington action to Travelers as an additional

12  insured under the policies.  *See id.* at ¶ 9; *see also* Vandermoore Decl., Ex. O at 84–86.  In the

13  tender letter, Shapell explained the status of the pre-litigation process and invited Travelers to

14  contact Plante Lebovic if it required more information.  *See* Vandermoore Decl., Ex. O at 86.  On

15  August 23, 2018, Travelers acknowledged receipt of the tender letter and requested a copy of the

16  subcontract, which Shapell provided the next day.  *See* Vandermoore Decl. at ¶ 5, & Ex. P at 102–

17  35.  Shapell further noted that a complaint had not yet been filed and the case remained in the pre-

18  litigation process.  *See id.*, Ex. P at 102.  From September 2018 to January 2019, Travelers

19  requested additional information from Shapell, and Shapell provided it.  *See id.* at ¶¶ 6–7, & Exs.

20  Q–R at 137–45.

21          On January 30, 2019, Matthew S. Constantino from Clapp, Moroney, Vucinich, Beeman &

22  Scheley advised Shapell through its counsel, Plante Lebovic, that Clapp Moroney had been

23  retained by Travelers to represent Shapell in the Abbington action.  *See* Dkt. No. 106-3

24  ("Constantino Decl.") at ¶ 3, & Exs. A–B at 4–15.  Mr. Constantino indicated that the firm would

25  send over "an Association of Counsel pleading" for Shapell's signature.  *See id.*, Ex. A at 4.

---

[2] For ease of reference, the Court refers to the page numbers of the PDF unless otherwise specified.

Shapell responded by requesting Travelers' reservation of rights letter. *See id.*, Ex. B at 6–12, 14.

Travelers sent the reservation of rights letter to Plante Lebovic on February 14, 2019. *See* Vandermoore Decl. at ¶ 9, & Ex. S at 147–53. The letter stated in relevant part:

> Travelers will participate in the defense of your client Shapell in [the Abbington action] under a full "reservation of rights" letter. . . .
>
> . . .
>
> Travelers agrees to defend Shapell with regard to the referenced matter. Accordingly, please provide Travelers with a statement of the amount your client contends Travelers currently owes for the defense of Shapell, the basis for the position, as well as the invoices for the amounts incurred in defending Shapell. Travelers specifically requests copies of all bills from the date of tender through the current time. In addition, please be advised that effective immediately, Travelers is asserting its right to appoint counsel of its choosing to represent Shapell in the Abbington Owners Association v. Shapell Industries, Inc and Toll Brothers, Inc. matter, and will be retaining the services of Mr. Matt Constantino of the law firm of Clapp, Moroney, Vucinich Beeman Scheley to handle the defense of Shapell in the Abbington Owners' Association v. Shapell Industries matter. If Shapell wishes to continue to retain their own counsel's services, it may do so, but at its own expense. From this date forward, Travelers will only pay for the defense fees and costs incurred by Mr. Constantino. Mr. Constantino will be contacting you shortly to discuss the handling of the matter.

*Id.* at 147, 153.

That day, Mr. Constantino asked Plante Lebovic for a time to discuss Clapp Moroney "associating in to this case and next steps." *See* Constantino Decl., Ex. B at 11. Plante Lebovic stated that it needed time to review the reservation of rights letter first. *See id.* at 6–10. On March 7, 2019, Plante Lebovic told Mr. Constantino:

> [W]e've been tied up on some matters in the last few weeks and haven't had a chance to fully touch base with the client regarding how they wish to proceed with their defense going forward, but we'll let you know as soon as we receive word. Thanks for your patience.

*See id.* Ex. B at 6. The parties did not reconnect before The Abbington Owners' Association filed the complaint against Shapell. *See* Plante Decl. at ¶ 18.

The Abbington Owners' Association filed a complaint against Shapell and others involved

in the Abbington at Gale Ranch development in Contra Costa Superior Court, *Abbington Owners' Assoc. v. Shapell Industries, Inc.*, Case No. MSC19-00503, on March 12, 2019. *See* Plante Decl. at ¶¶ 18–19, & Ex. 4 at 27–63. What follows is a series of email correspondence between Plante Lebovic and Clapp Moroney.

- On June 6, 2019, Clapp Moroney emailed Plante Lebovic, asking to confirm that a complaint and demurrer were filed in the Abbington action, and requesting copies of those documents. *See* Constantino Decl., Ex. D at 28. Clapp Moroney reached out again on June 20, June 24, and July 10 "for an update on this matter." *See id.* at 26–27.

- On August 28, 2019, Plante Lebovic provided Mr. Constantino with information regarding a mediation session scheduled with JAMS for September 20, 2019. *See id.*, Ex. E at 40. Mr. Constantino requested mediation briefs and other related documents "to get us up to speed for the 9/20 mediation session." *See id.* at 39–40. He explained that "[w]e have no information at this time." *See id.* at 40.

- On September 11, Plante Lebovic responded that the mediation date was moved to September 25, and provided the requested documents. *See id.* at 37–39.

- On October 7, after the mediation session, Clapp Moroney emailed Plante Lebovic again "following up on whether our office will be associating in." *See id.* at 36. Clapp Moroney sent another email on December 15 asking "for any updates since the September 25, 2019 mediation." *See id.*, Ex. F at 43.

- Clapp Moroney sent a letter on January 14, 2020, asking for updates regarding the status of any settlement discussions or additional mediation dates. The letter further asked "[w]hether the client and AIG have indicated how to proceed with regard to Clapp Moroney associating in or substituting in as counsel." *See id.*, Ex. G at 51–52.

- Clapp Moroney sent another letter on February 7, 2020, asking whether Clapp Moroney would be associating in or substituting in as counsel in the Abbington action. *See id.*, Ex. H at 55–56.

1       On February 13, Plante Lebovic responded:

> At this point we believe it makes sense to hold off on having Clapp Moroney associate into the case as we are close to completing our efforts at resolving the case through the development of a mediated scope of repair. We are currently waiting for the HOA's expert to provide his response to the defense cost of repair which we are hopeful will become the mediated scope of repair.

*See id.*, Ex. I at 58–59. Plante Lebovic further explained that they were selecting new dates for mediation in April and May 2020, and would let Clapp Moroney know the details once confirmed. *Id.* On March 10, 2010, Clapp Moroney confirmed, "[a]s recommended by your law office, we are holding off on associating in at this time." *See id.*, Ex. J at 62–63. In the letter, Clapp Moroney asked for further updates regarding the litigation, upcoming mediation session, and settlement discussions. *Id.* Defendants assert that since then, Clapp Moroney has not made any further requests to associate into the case or to participate in Shapell's defense. *See* Plante Decl. at ¶ 28. Rather, the firm has only requested status updates about the Abbington action, which Plante Lebovic has provided monthly. *See id.* at ¶¶ 28–29, & Ex. 8 at 188–298.

Nevertheless, on June 2, 2020, Travelers filed this insurance action. *See* Dkt. No. 1. Travelers claims that under the policies, it has the right to retain counsel of its own choosing to represent Shapell, and that Shapell must cooperate in all aspects of the defense. *See* Vandermoore Decl., Ex. L at 11, 23; Ex. M at 36, 48. Defendants do not appear to challenge that this is correct under the language of the policies and under California law. *See* Dkt. No. 112 at 11–15; Dkt. No. 115 at 14–23. To the contrary, Defendants state that "Shapell had no objection to Clapp, Moroney associating in as co-counsel with Plante Lebovic LLP" and "Shapell does not dispute that Travelers may control whatever Clapp, Moroney does or does not do in conjunction with the defense of Shapell since Travelers is paying Clapp, Moroney's fees." *See* Dkt. No. 115 at 15. However, the parties dispute whether Shapell refused to accept Travelers' chosen counsel—Clapp Moroney—in the *Abbington* action. *See* Dkt. Nos. 106, 115.

Travelers thus brings causes of action against Defendants Toll Brothers and Shapell for (1) breach of contract; (2) equitable reimbursement; and (3) declaratory relief that (i) Travelers has

United States District Court
Northern District of California

the right to control the defense in the *Abbington* action; (ii) Toll Brothers and Shapell are not entitled to appoint independent counsel under California Civil Code § 2860; (iii) Toll Brother and Shapell's alleged insistence otherwise is a breach of its duty to cooperate; and (iv) Travelers is not obligated to pay any fees and costs incurred in the Abbington action from the date Travelers selected Clapp Moroney as counsel. *See* FAC at ¶¶ 38–60. Both parties now move for partial summary judgment as to the claims involving Shapell and Toll Brothers. *See* Dkt. Nos. 106, 115.

## II.   CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.   Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence

1  supporting its claim or defense simply by saying that the nonmoving party has no such evidence."
2  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105.  "If a moving party fails to carry its initial
3  burden of production, the nonmoving party has no obligation to produce anything, even if the
4  nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.
5  "If, however, a moving party carries its burden of production, the nonmoving party must produce
6  evidence to support its claim or defense." *Id.* at 1103.  In doing so, the nonmoving party "must do
7  more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*
8  *Elec. Indus. Co.*, 475 U.S. at 586.  A nonmoving party must also "identify with reasonable
9  particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
10 1279 (9th Cir. 1996).  If a nonmoving party fails to produce evidence that supports its claim or
11 defense, courts enter summary judgment in favor of the movant.  *Celotex Corp.*, 477 U.S. at 323.

### B.  Discussion

The parties appear to agree that under the policies, Travelers has the right to control the defense in the Abbington action.  *See Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 19 Cal. App. 5th 789, 797 (Cal. Ct. App. 2018) ("Generally, an insurer owing a duty to defend an insured . . . has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation.") (quotations omitted); *Safeco Ins. Co. v. Superior Ct.*, 71 Cal. App. 4th 782, 787 (Cal. Ct. App. 1999) ("When the insurer provides a defense to its insured, the insured has no right to interfere with the insurer's control of the defense . . . .").  However, the Court finds that there is a genuine factual dispute about whether Defendants violated Travelers' right to control the defense and thus breached the insurance policy.  *Compare* Dkt. No. 106 at 14–20, *with* Dkt. No. 115 at 15–23.

Travelers urges that the correspondence detailed in Section I above illustrates that Defendants have not allowed Travelers' chosen counsel to defend Defendants in the Abbington action.  Travelers points out that its reservation of rights letter explicitly stated that it was asserting its right to appoint Mr. Constantino from Clapp Moroney as counsel in the Abbington action.  *See* Vandermoore Decl., Ex. S at 153.  The letter further explained that although Defendants could "continue to retain their own counsel's services," it would be at Defendants' "own expense"

because "Travelers will only pay for the defense fees and costs incurred by Mr. Constantino." *See id.* Travelers thus suggests that Defendants had to decide whether to continue with Plante Lebovic, or allow Clapp Moroney to defend them in the Abbington action. Mr. Constantino accordingly reached out to Plante Lebovic to determine whether he should substitute or associate in as counsel in the matter. *See* Constantino Decl., Ex. B at 11. Despite the correspondence from Mr. Constantino, Travelers argues that "Clapp Moroney was not given permission to associate in" and represent Defendants. *See* Dkt. No. 106 at 15. Instead, Travelers argues that Defendants delayed and obfuscated. *Id.* Initially, Plante Lebovic said they had not "had a chance to fully touch base with the client regarding how they wish to proceed with their defense going forward, but we'll let you know as soon as we receive word." *See* Constantino Decl., Ex. B at 6. In the interim, Plante Lebovic continued to represent Defendants, implementing its own defense strategy, and incurring costs. *See id.* Approximately a year after Travelers asserted its right to appoint counsel for Defendants, Plante Lebovic finally told Clapp Moroney that "[a]t this point we believe it makes sense to hold off on having Clapp Moroney associate into the case as we are close to completing our efforts at resolving the case . . . ." *See* Constantino Decl., Ex. I at 58–59. Travelers urges that these facts show that Defendants never allowed Travelers to control the defense. *See* Dkt. No. 106 at 15–16. Travelers further notes that in the meantime Defendants were incurring defense costs associated with Plante Lebovic's defense in the Abbington action.[3] *See id.* at 17–18.

Defendants, in turn, assert that Clapp Moroney "was never prevented from participating" in the Abbington action, and that Defendants kept Clapp Moroney apprised of the Abbington action. *See* Dkt. No. 112 at 6, 10–13. Defendants further argue that Clapp Moroney never asked

---

[3] Defendants repeatedly state that they have not asked—and are not asking—Travelers to reimburse them for Plante Lebovic's attorneys fees. *See, e.g.*, Dkt. No. 112 at 1, 5–8, 10–11, 16. However, the record is clear that Defendants have sought reimbursement for *costs* incurred by Plante Lebovic as part of its defense of Defendants in the Abbington action, including consultant and expert fees. *See, e.g., id.* at 7–8; Plante Decl. at ¶¶ 30–31, 35–36, & Exs. 9, 12 at 300–25, 609–62. Travelers' reservation of rights letter stated: "Travelers will only pay for the defense fees and costs incurred by Mr. Constantino" from Clapp Moroney. *See* Vandermoore Decl., Ex. S at 153. Thus, to the extent Defendants argue that there is no justiciable controversy on this basis, Dkt. No. 112 at 10–11, the Court rejects this argument.

8

1  Shapell to do—or refrain from doing—anything in conjunction with the defense in the Abbington
2  action. *Id.* In response to updates about the Abbington action, neither Clapp Moroney nor
3  Travelers objected to Plante Lebovic's defense strategy or provided any substantive direction or
4  input into the Abbington action. *See id.* To the contrary, Clapp Moroney merely asked for further
5  updates and Travelers paid the defense costs that Defendants submitted without objection. *See*
6  Plante Decl. at ¶¶ 30–31, 35–36. Defendants point out that Travelers did not express any
7  objections to Plante Lebovic's role in the Abbington action until the filing of this action.
8  Defendants maintain that "Clapp Moroney clearly elected to stay out of the action," and if Plante
9  Lebovic had not continued to represent Defendants they would have "run the risk of having no
10 defense at all." *See* Dkt. No. 119 at 5–6. In short, Defendants conclude that Clapp Moroney's
11 passivity—not Defendants' conduct—prevented Travelers from controlling the defense in the
12 Abbington action.

13 The parties' arguments thus turn on the interpretation of the communications between
14 Clapp Moroney and Plante Lebovic detailed in Section I above. Travelers urges that the
15 communications show that it asserted its right for Clapp Moroney to control the defense of the
16 Abbington action, and Defendants did not allow it to do so. Defendants, on the other hand,
17 suggest that the communications show that Clapp Moroney elected to assume a passive role in the
18 Abbington action and never attempted to control the defense at all. The Court accordingly finds
19 that there is at least one genuine dispute of material fact precluding summary judgment in this
20 case. *See* Fed. R. Civ. P. 56(a). The parties' motions for partial summary judgment are therefore
21 **DENIED**.

22 **III. MOTIONS TO SEAL**

23 The parties also filed administrative motions to file documents under seal in connection
24 with their summary judgment briefing. Dkt. Nos. 105, 111, 114, 116. Specifically, the parties
25 seek to file under seal the email communications between Defendants and Clapp Moroney
26 regarding the Abbington action, counsel's billing records regarding the Abbington action, and
27 references to these emails. *Id.*
28 //

### A. Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotations omitted). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

### B. Discussion

Because the parties move to file documents related to dispositive motions, the Court will

1  apply the compelling reasons standard.  The parties argue that the email communications contain
2  attorney-client privilege and attorney work product doctrine material regarding the Abbington
3  action.  The Abbington action also remains in active litigation, as the arbitration is scheduled for
4  March 22, 2022.  *See* Dkt. No. 109 at ¶ 3.  "Courts have accepted attorney–client privilege and the
5  work-product doctrine as sufficient justifications for sealing, even under the higher 'compelling
6  reason' standard."  *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL
7  3067783, at *3 (N.D. Cal. Mar. 16, 2018) (collecting cases).

8  However, the Court has reviewed in detail the documents that the parties claim are
9  privileged, and the communications do not meet the compelling reasons standard.  Rather, as
10 discussed above, these communications involve discussions between Clapp Moroney and Plante
11 Lebovic about Clapp Moroney associating in as counsel and upcoming court and mediation dates.
12 At times, the parties request documents such as mediation prep materials that could provide unfair
13 insight into the defense strategy, but these documents are not included in the exhibits themselves.
14 The communications are critical to the dispute at issue in this case, but offer little by way of
15 insight into the actual defense strategy in the Abbington action.  It is also not clear how the billing
16 records could potentially reveal or provide unfair insight into Defendants' litigation strategy to the
17 opposing parties in the Abbington action.  Although some portion of the billing records may be
18 privileged, the records also include a significant amount of non-privileged information, including
19 billing rates and the number of hours billed.  The parties, however, request that these exhibits be
20 filed under seal in their entirety.  As the Civil Local Rules explain, parties shall "avoid wherever
21 possible sealing entire documents (as opposed to merely redacting the truly sensitive information
22 in a document)," and "overly broad requests to seal may result in the denial of the motion."  *See*
23 L.R. 79-5(a), (f)(5).  The motions are therefore **DENIED**.

24 **IV.   CONCLUSION**

25 Accordingly, the Court **DENIES** the motions for summary judgment, Dkt. Nos. 106, 115.
26 The Court also **DENIES** the administrative motions to file under seal.  Dkt. Nos. 105, 111, 114,
27 116.  The Court **DIRECTS** the parties to file public versions of all documents for which the
28 proposed sealing has been denied within seven days of this order.  The parties may also file a new

11

motion to seal as to the billing records within seven days of this order.  Any such motion must establish sufficient basis for narrowly tailored sealing in accordance with the requirements discussed above.

The Court further **SETS** a telephonic case management conference for February 1, 2022, at 2:00 p.m. to discuss how to move this case forward efficiently.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  No further joint case management statement needs to be filed before the conference.  The Court has reviewed the parties' stipulation and statement requesting relief from the scheduling order deadlines.  *See* Dkt. Nos. 124, 125.  The case schedule, however, remains in place and will be discussed during the upcoming case management conference.  Unless and until the Court modifies the scheduling order, the parties must continue to meet all existing deadlines.

**IT IS SO ORDERED.**

Dated: 1/25/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge